**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **ERIC BOLDEN,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:09-cv-267 |
| v. | : | |
| | : | Judge Herman J. Weber |
| **HYDE PARK LANDSCAPE & TREE** | : | |
| **SERVICE, INC.,** *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

---

Date:  April 15, 2011

Alison M. Day, Trial Attoney  (#0068060)
Melanie A. Houghton, Of Counsel  (#0082760)
LITTLER MENDELSON, P.C.
21 East State Street #1600
Columbus, OH  43215
Telephone:  614.463.4201
Facsimile:  614.221.3301
E-mail:     aday@littler.com
            mhoughton@littler.com

*Attorneys for Defendants*

I.      **PROPOSED FINDINGS OF FACT**

    A.      **Background**

**Proposed Finding of Fact No. 1:** In February 2006, Plaintiff was hired by Hyde Park Landscaping, Inc. ("Hyde Park Landscaping" or "the Company") as a Turf & Estate Manager. (Pl. Dep. 46, 48, 50). Hyde Park Landscaping performs a variety of services for its customers, including landscape design, horticulture, tree care, tree removal, lawn care, snow removal, and landscape maintenance and pest prevention. (Shumrick Dep. 19-21, 30; Ziegler Dep. 39). The Company currently employs approximately 40 individuals, including some salaried and some hourly seasonal employees. (Shumrick Dep. 17, 21-22; Ziegler Dep. 38-39).

**Proposed Finding of Fact No. 2:** Throughout his employment, Plaintiff was a salaried employee. (Pl. Dep. 50). His job duties included hiring and managing lawn care technicians, overseeing operations at the Company's Norwood, Ohio facility, purchasing fertilizer and chemicals, and customer service. (Pl. Dep. 48-49). Plaintiff's direct supervisor was Company President/Owner and individual Defendant, Michael Shumrick. (Shumrick Dep. 24).

**Proposed Finding of Fact No. 3:** After completing a 30-day probationary period, Plaintiff elected to obtain medical insurance for himself and his spouse through the Company's Humana Insurance Company ("Humana") Medical Plan. (Pl. Dep. 88-91, Pl. Dep. Ex. 3). Plaintiff disclosed on his March 2006 application for benefits through Humana that he suffered from Hypertension and Renal Insufficiency. (Pl. Dep. Ex. 3 at HPL-0033). After Humana approved Plaintiff's application for benefits, the Company deducted fifty percent of the monthly Plan premium from his paycheck and paid for the remaining fifty percent. (Shumrick Dep. 51, 55; Ziegler Dep. 118, 119).

**B.**    **The Company Changes Medical Insurance Providers**

**Proposed Finding of Fact No. 4:** In December 2006, the Company received a letter from Humana which stated that "[d]ue to claim utilization, rising health care inflation and higher costs of new technologies, Humana is implementing an increase of 24.4 percent for Medical, and 12.26 percent for Life, effective February 1, 2007." (Ziegler Dep. Ex. 7).   Subsequently, Shumrick instructed Shannon Ziegler ("Ziegler"), who worked in the business office and was responsible for medical insurance issues, to look into alternative insurance providers. (Ziegler Dep. 57, 164, 170).   After Ziegler obtained and reviewed quotes from several insurance companies, the Company decided to switch from Humana to Anthem, effective February 1, 2007. (Ziegler Dep. 65-68; Shumrick Dep. 140).

**Proposed Finding of Fact No. 5:** As a result of the change in insurance companies, all full time employees were required to complete new applications for insurance. (Pl. Dep. Ex. 5; Pl. Dep. 96; Ziegler Dep. 73).   Ziegler partially filled in the employees' applications with information he obtained from employees' personnel files, but specifically instructed everyone in a letter dated December 15, 2006 to "read through [the applications] to make sure everything is correct."[1]  (Pl. Dep. Ex. 5; Ziegler Dep. 75, 137).  He further instructed everyone, including Plaintiff, that "[i]f there are any mistakes, please correct them, and fill in all areas that are not completed." (Pl. Dep. 96, 99-101, Pl. Dep. Ex. 5).  Finally, he instructed employees to sign the applications when finished, and return them by January 2, 2007. (Pl. Dep. Ex. 5).

**Proposed Finding of Fact No. 6:** Within a couple of days after Ziegler distributed the applications to everyone, he had received all of them back except for Plaintiff's application. (Ziegler Dep. 76).  Wanting to submit the applications to Anthem as soon a possible, Ziegler

---

[1]      Ziegler did not fill out the applications using information from the Humana insurance applications, because he was not aware the Company had copies of those on the premises.  (Ziegler Dep. 138).

asked Plaintiff if he had his application.  *Id.* Plaintiff replied that his application was at home.  *Id.* Ziegler requested that Plaintiff bring it to him the next day, but Plaintiff did not do so.  *Id.*  On December 26, 2006, Ziegler handed Plaintiff a new application with certain parts filled out, and asked Plaintiff to sign it.  (Ziegler Dep. 76-77; Pl. Dep. 97-99).  Ziegler glanced at the application and then immediately handed it back to Plaintiff, stating that it did not appear to be complete.  *Id.* at 77.  Plaintiff took the application back from Ziegler and returned it within a minute or so thereafter.  *Id.*  Ziegler then placed the application with the others he had received from everyone else and submitted the documents to the Company's insurance broker.  *Id.* Plaintiff remembers signing the Anthem application, but did not read it carefully or make any changes before signing, and does not recall what, if anything, was written on the form that he signed.  (Pl. Dep. 101-104).  Although he disclosed on his previous application for benefits through Humana that he suffered from hypertension and renal insufficiency, he signed the Anthem application without adding any reference to those conditions.  (Pl. Dep. Ex. 3 at HPL-0033).  Therefore, Plaintiff's application to Anthem was not accurate or complete.  His coverage through Anthem ("the Anthem Plan") began on February 1, 2007.  (Ziegler Dep. Ex. 15).

C.     **Plaintiff Is Diagnosed With End Stage Renal Failure**

**Proposed Finding of Fact No. 7:** Plaintiff has suffered from hypertension since 2000. (Pl. Dep. 91).  In approximately 2003, Plaintiff was diagnosed with renal insufficiency.  (Pl. Dep. 91).  Thereafter, Plaintiff's physicians monitored his renal insufficiency condition on a quarterly basis.  (Pl. Dep. 92, 106).  On or about February 20, 2007, Plaintiff went to the hospital after getting sick at work and was diagnosed with end-stage renal failure.  (Pl. Dep. 93, 105). Shumrick allowed Plaintiff to take a leave of absence from work while he was in the hospital for two weeks. (Pl. Dep. 107). After Plaintiff left the hospital, he was required to receive dialysis treatments three times per week.  (Pl. Dep. 106-107).  Shumrick allowed Plaintiff to leave work

early whenever necessary during the week so that he could maintain his treatment schedule. (Pl. Dep. 107; Shumrick Dep. 149).

### D. Anthem Threatens To Terminate The Company's Medical Insurance

**Proposed Finding of Fact No. 8:** In July of 2007, Anthem sent the Company a bill for monthly premiums, which was more than double the premium amounts reflected on previous bills. (Ziegler Dep. 84). Ziegler called Anthem to ascertain the reason for the increase, and was informed that someone, who Anthem refused to identify, had falsified an application. *Id.*. Following this conversation, Ziegler contacted Betsy Worrall, the Company's insurance broker, who was able to learn that it was Plaintiff who had submitted an application that did not disclose all of his current medical conditions. (Ziegler Dep. 84; Worrall Aff. ¶¶ 6-7). Specifically, Plaintiff's application did not disclose that he suffered from renal insufficiency. (Pl. Ex. 4). According to Ms. Worrall, she told Ziegler that the Company could maintain its coverage with Anthem if they paid the higher premiums. (Worrall Aff. ¶ 7). She also believes she told Ziegler that it is illegal to falsify documents. (Worrall Aff. ¶ 8). Following his discussion with Ms. Worrall, Ziegler called Anthem back to find out exactly what the Company needed to do to rectify the situation. (Ziegler Dep. 84). During this phone call, he was informed by an Anthem representative that Anthem was considering terminating the Company's group policy, "and that they would not carry us as long as [Plaintiff] was on our payroll." *Id.*

**Proposed Finding of Fact No. 9:** Ziegler then informed Shumrick that Plaintiff had falsified his insurance application and that Anthem might terminate the Company's group policy as a result, if Plaintiff remained on the Company's payroll. (Ziegler Dep. 92, 124-125; Shumrick Dep. 141-142, 145-146). Not wanting to terminate Plaintiff's employment and end his source of income despite his actions, Shumrick made the decision to transfer Plaintiff from Hyde Park Landscaping to the payroll of an affiliated Company, Hyde Park Landscaping & Tree. (Shumrick

Dep. 150; Ziegler Dep. 94, 130-131). Shumrick also terminated Plaintiff's Anthem benefits at this time because he falsified his insurance application and because Hyde Park Landscaping & Tree did not provide group health insurance. (Shumrick Dep. 150, 163-164, 179; Ziegler Dep. 95). However, Plaintiff's other benefits and compensation did not change as a result of the transfer. (Pl. Dep. 50; Shumrick Dep. 180). He also retained the same job title and job duties after the transfer. (Pl. Dep. 67).

**Proposed Finding of Fact No. 10:** Subsequent to Plaintiff's transfer to Hyde Park Landscaping & Tree, the Company made the decision to terminate the Anthem Plan as to all employees because it was unable to sustain the substantial increase in premiums. (Shumrick Dep. Ex. 11, Ziegler Dep. 83-84, 98). In September 2007, the Company obtained group health insurance coverage through Medical Mutual of Ohio ("Medical Mutual"). (Ziegler Dep. 55, 83). Then, due to employee dissatisfaction with the benefits offered through the Medical Mutual Plan, the Company switched back to Anthem, effective April 1, 2008. (Shumrick Dep. Ex. 10; Ziegler Dep. 132-133). Plaintiff did not participate in any of the Company's group health insurance plans after August 2007, because the group health plan was only offered to certain employees of Hyde Park Landscaping, and Plaintiff remained an employee of Hyde Park Landscaping and Tree. (Pl. Dep. Vol. 2 at 7; Ziegler Dep. 106, 129).

### E. <u>Plaintiff Abandoned His Position</u>

**Proposed Finding of Fact No. 11:** By January 2009, Shumrick laid off most of the Company's employees due to the winter weather and the resulting lack of work. (Shumrick Dep. 84). Plaintiff was also laid off in January 2009, but was the last employee in the Norwood, Ohio location to be laid off. (Pl. Dep. 68). When Shumrick informed Plaintiff about his layoff, he explained that the reason was lack of work and that everyone would come back to work when customer demand for services increased in the warmer weather. (Pl. Dep. 69). According to

Plaintiff, Shumrick "kept everyone employed as long as he could." (Pl. Dep. 68). During the period he was laid off, Plaintiff was permitted to keep his company cell phone and his uniforms. (Pl. Dep. 69).

**Proposed Finding of Fact No. 12:** The following month, Shumrick initiated the process of calling all of the employees back to work. (Shumrick Dep. 85). As part of this process, Shumrick contacted the employees to discuss and establish a return-to-work date that made sense in light of their respective workloads. (Shumrick Dep. 193-194). On February 19, 2009, Shumrick called Plaintiff to set up a time to meet and discuss the coming year. (Shumrick Dep. 85-86; Seiter Aff. ¶ 5; Pl. Dep. Ex. 2). Because Shumrick was working at the Home and Garden Show, he only had a short time to speak with Plaintiff, so he called Plaintiff back on February 21, 2009. (Pl. Dep. 77; Shumrick Dep. 85, 87; Seiter Aff. ¶ 5; Pl. Dep. Ex. 2). During that conversation, Shumrick and Plaintiff agreed that Plaintiff would call to set up a time to discuss his return to work the following week. (Shumrick Dep. 87-89, 196). According to Shumrick, he wanted to meet with Plaintiff to "get back to work and get things moving again." (Shumrick Dep. 87-89).

**Proposed Finding of Fact No. 13:** However, Plaintiff did not stop by the office the following week or call Shumrick to discuss a meeting time. (Shumrick Dep. 94-95). Accordingly, Shumrick attempted to call him on March 3, 2009, March 6, 2009, and March 10, 2009, but never received a return phone call. (Shumrick dep. 87-88, 197; Pl. Dep. Ex. 2; Seiter Aff. ¶ 5). After five attempts to contact Plaintiff with no success or return phone call, the Company reasonably concluded that Plaintiff had abandoned his position. (Shumrick Dep. 93, 198).

## II.    PROPOSED CONCLUSIONS OF LAW AND ADDITIONAL PROPOSED FINDINGS OF FACT

### A.    Standard of Review

**Proposed Conclusion of Law No. 1:** Rule 56(C) of the Federal Rules of Civil Procedure provides that summary judgment should be rendered where the pleadings, depositions, affidavits, and other documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Where, as here, a party that does not have the burden of proof on a claim moves for summary judgment, it bears the initial responsibility of demonstrating that the record is devoid of evidence to support the claim.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  That requirement may be satisfied merely by pointing out that the non-moving party, having had a sufficient opportunity for discovery, has no evidence to support an essential element of the claim.  Id. at 324.

**Proposed Conclusion of Law No. 2:** If the movant satisfies the requirement of showing that the record is devoid of evidence to support the claim, the non-moving party must then go outside the pleadings and come forth with admissible evidence demonstrating that specific facts exist that raise genuine issues for trial.  *See* Celotex, 447 U.S. at 324.  To avoid summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *See* Matsushita Electric Co. v. Zenith Radio Corp. 475 U.S. 574, 586 (1986).  The non-movant's burden is to present evidence that is sufficient to support a verdict in favor of the non-movant by a rational trier of fact.  *See* Celotex, 477 U.S. at 324, 327.  Applying these legal principles to the case at bar compels the conclusion that Plaintiff's claims are without merit, and must be summarily dismissed.

**B.**     **Plaintiff Cannot Establish His Claim For Disability Discrimination In Count I Of His Second Amended Complaint Based On His Transfer To Hyde Park Landscaping & Tree In 2007**

    **1.**     **Plaintiff's Claim Relative To His 2007 Transfer To Hyde Park Landscaping & Tree Is Preempted By ERISA**

        *a.*     *The Legal Standard For ERISA Preemption*

**Proposed Conclusion of Law No. 3:** The broad preemption provision contained in ERISA § 514(a) provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).  The Supreme Court has interpreted this clause to preempt state law claims that would allow employee benefit plan beneficiaries to "obtain remedies under state law that Congress rejected in ERISA." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987); *see also* Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983) ("A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.").  According to the Supreme Court, the intent of Congress was "that the civil enforcement provisions of ERISA § 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." Pilot Life, 481 U.S. at 52.

**Proposed Conclusion of Law No. 4:** The Sixth Circuit has recognized the broad sweep of ERISA's preemption provision in relation to state law claims, noting that "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." Central States v. Mahoning Nat. Bank, 112 F.3d 252, 255 (6th Cir. 1997); *see also* Briscoe v. Fine, 444 F.3d 478, 498 (6th Cir. 2006) ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.") (internal citations and quotations omitted).  Furthermore, Courts have consistently held that ERISA preempts a discrimination claim based on state law which requires that a court's inquiry be directed to the plan. *See, e.g.,*

8

Lockett v. Marsh USA, Inc., 2007 U.S. Dist. LEXIS 73939, at **10–12 (N.D. Ohio Oct. 3, 2007) (finding that the plaintiff's state law cause of action for discrimination depended on whether or not she was entitled to benefits under an ERISA-governed severance plan and holding that the cause of action was completely preempted); Felton v. Unisource Corp., 940 F. 2d 503, 510 (9th Cir. 1991) (a claim for disability discrimination under an Arizona employment rights statute was preempted by ERISA where the employee alleged that the motivating factor in the decision to terminate her employment was to prevent her from receiving health benefits); *see also* Ingersoll-Rand v. McClendon, 498 U.S. 133, 145 (1990) (state law cause of action for wrongful discharge was preempted by ERISA § 510).

> **b.** *Plaintiff's Disability Discrimination Claim Based On His Transfer To Hyde Park Landscaping & Tree In 2007 Relates To An ERISA Plan*

**Proposed Finding of Fact No. 14:** At the time of his transfer to Hyde Park Landscaping & Tree, Plaintiff was a participant in the Anthem Plan.

**Proposed Conclusion of Law No. 5:** As this Court has already found, the Anthem Plan is governed by ERISA. (*See* February 22, 2010 Order, Dkt. # 32 at 11; *see also* Second Amended Complaint ¶ 3, stating that "the subject Plan constitutes a 'plan under ERISA'").

**Proposed Finding of Fact No. 15:** While Plaintiff alleges in his Complaint that his disability was a motivating factor in Defendants' decision to transfer him to Hyde Park Landscaping & Tree, the *only* factual allegation he asserts in support of his purported disability claim is that his medical insurance under the Anthem Plan was terminated. (Pl. Dep. 147-148; *see also* Second Amended Complaint ¶ 37 ("[t]he only reason Defendants transferred Plaintiff from HPL to HPL-TS was because of the insurance issue.")).  Specifically, Plaintiff testified as follows:

> Q.     How do you believe Hyde Park or Michael discriminated [against] you on the basis of your disability?
>
> A.     By cancelling my health insurance.
>
> Q.     Anything else that you believe Hyde Park or Michael did to discriminate [against] you based on your disability?
>
> A.     No.

(Pl. Dep. 147).

**Proposed Finding of Fact No. 16:** Plaintiff also admits that the only term or condition of his employment that was impacted by the transfer was his ability to continue his participation in the Anthem Plan.  Other than the fact that he no longer had insurance coverage, nothing about Plaintiff's employment changed after he was transferred to the other entity's payroll.  (Pl. Dep. 50, 67).

**Proposed Conclusion of Law No. 6:** Plaintiff's state-law discrimination claim relates exclusively to the loss of his insurance benefits  and his belief he is entitled to recover medical benefits under the Anthem Plan.

**Proposed Finding of Fact No. 17:**  As this Court previously found, "[i]t is clear based on his allegations that plaintiff cannot claim entitlement to medical coverage and benefits except under the Plan," an entitlement which cannot be evaluated independent of the terms of the Anthem Plan itself.  (*See* February 22, 2010 Order, Dkt. # 32 at 11-12).  In this claim, Plaintiff  is seeking to enforce his rights under the plan and recover certain amounts (medical costs) that he alleges would have been paid on his behalf had his participation in the Plan not been cancelled. (Second Amended Complaint ¶¶ 41, 65, 74, 84, 90-93, Prayer; Pl. Dep. 67).

**Proposed Conclusion of Law No. 7:**  Plaintiff's state-law discrimination claim as alleged in Count I of his Second Amended Complaint is one to enforce his rights under the plan

or to clarify his rights to future benefits under the terms of the plan, and is completely preempted under ERISA.

**Proposed Conclusion of Law No. 8:** In Ingersoll-Rand, the Supreme Court also found that, even if complete preemption were not present, a state cause of action will be preempted if it conflicts directly with an ERISA cause of action.  *See* Ingersoll-Rand, 498 U.S. at 143. Plaintiff's discrimination claim based on his 2007 transfer falls squarely within the purview of ERISA, which provides in pertinent part as follows:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

ERISA § 510, 29 U.S.C. § 1140.  Thus, the statutory language explicitly protects a participant from discrimination against a plan participant for the purpose of interfering with the participant's plan benefits.

**Proposed Conclusion of Law No. 9:** As noted by the U.S. Supreme Court, Congress intended ERISA's civil enforcement mechanism, 29 U.S.C. § 1132, to be "the exclusive remedy for rights guaranteed under ERISA, including those provided by § 510 [29 U.S.C. § 1140]." Ingersoll-Rand, 498 U.S. at 144 (citing Pilot Life, 481 U.S. at 54).  Accordingly, Plaintiff's discrimination claim under Count I of the Second Amended Complaint is subject to conflict preemption, as well as complete preemption, and must be dismissed.

2. **Plaintiff's Disability Discrimination Claim Based On His Transfer To Hyde Park Landscaping & Tree In 2007 Must Be Dismissed Because Defendants Had a Legitimate, Non-Discriminatory Reason For The Transfer, and Plaintiff Cannot Establish That This Reason is a Pretext For Disability Discrimination**

a. *The Legal Standard for Disability Discrimination Claims*

**Proposed Conclusion of Law No. 10:** Even assuming, *arguendo*, that Plaintiff's disability discrimination claim based on the loss of his insurance due to his transfer to Hyde Park Landscaping and Tree in 2007 was not pre-empted by ERISA, it nonetheless fails because Defendants were not motivated by Plaintiff's alleged disability, end stage renal failure, in making this decision. Thus, this claim fails on its merits and must be dismissed for this additional reason. In order to state a claim for disability discrimination, a plaintiff must begin by presenting either direct evidence of discrimination or a prima facie case of discrimination. *See* Snowden v. P&G Distrib. Co., 14 Fed. Appx. 605, 608 (6th Cir. 2001). Where, as here, a plaintiff has no direct evidence of disability discrimination[2], his claims must be analyzed under the burden-shifting framework established by the U.S. Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-802 (1973). Under the applicable tests, disparate treatment cases such as the present one are subject to the familiar tripartite analysis: (1) the plaintiff must establish a *prima facie* case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its action; and (3) the burden then shifts back to the plaintiff to prove that the reason offered by the employer is a pretext for intentional discrimination and that intentional discrimination motivated the action. Id.[3]

---

[2]     Plaintiff cannot cite to any direct evidence that Defendants transferred him to Hyde Park Landscaping and Tree because he had end stage renal failure.

[3]     Under Ohio law, disability discrimination claims brought pursuant to Chapter 4112 entail the same legal analysis as those under the ADA. *See* Brenneman v. Med-Central Health Sys., 366 F.3d 412, 418 (6th Cir. 2004) ("[B]ecause Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, we will analyze plaintiff's state and federal discrimination claims under Ohio Revised Code § 4112 and the ADA, respectively, solely under the ADA.").

**Proposed Conclusion of Law No. 11:** Under Ohio law, disability discrimination claims brought pursuant to Chapter 4112 entail the same legal analysis as those under the ADA. *See* Brenneman v. Med-Central Health Sys., 366 F.3d 412, 418 (6th Cir. 2004) ("[B]ecause Ohio case law tends to suggest that it entails the same legal analysis as that under the ADA, we will analyze plaintiff's state and federal discrimination claims under Ohio Revised Code §4112 and the ADA, respectively, solely under the ADA.").

**Proposed Conclusion of Law No. 12:** To establish a *prima facie* case of disability discrimination, A plaintiff must prove that: (1) he is a disabled person within the meaning of the ADA or Ohio Revised Code; (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered an adverse employment decision because of his disability. *See* Gilday v. Mecosta County, 124 F.3d 760, 762 (6th Cir. 1997). For purposes of this Motion for Summary Judgment, Defendants will not contest Plaintiff's ability to establish these elements.

### b. *Defendants Had A Legitimate, Non-Discriminatory Reason For Transferring Plaintiff To Hyde Park Landscaping & Tree*

**Proposed Finding of Fact No. 18:** Ziegler notified Shumrick that Anthem had threatened to cancel the Company's group health policy for all employees as long as Plaintiff was on the Company's payroll, because Plaintiff falsified his application for benefits. (Shumrick Dep. 142, 144; Ziegler Dep. 84, 91). Not wanting to terminate Mr. Bolden's employment even though he would have been fully justified in doing so, Mr. Shumrick removed Mr. Bolden from the Anthem Plan and transferred him from Hyde Park Landscaping to Hyde Park Landscaping & Tree, where group health plan benefits were not provided, so that Mr. Bolden could continue to receive a paycheck and other fringe benefits. (Shumrick Dep. 150). Plaintiff's job duties and

benefits, with the exception of his health insurance, were not impacted in any way by the transfer.  (Pl. Dep. 50, 67).

**Proposed Conclusion of Law No. 13:** Defendants have clearly met their burden of presenting a legitimate non-discriminatory reason for Plaintiff's transfer, as the decision was based on Plaintiff falsifying his insurance application, and in particular the ramifications of his failure to disclose renal insufficiency, not the fact that he was suffering from any disability.

c.     *Plaintiff Cannot Show That Defendants' Legitimate, Non-Discriminatory Reasons Are Pretextual*

**Proposed Conclusion of Law No. 14:** Because Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's 2007 transfer to Hyde Park Landscaping & Tree, any inference of discrimination is rebutted.  The only remaining question is whether Plaintiff can show by a preponderance of the evidence that the reason offered by Defendants are not their true reasons, but instead a mere pretext for disability discrimination.  *See* Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1991); *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.").

**Proposed Conclusion of Law No. 15:** To establish Defendants' proffered reason was "pretextual," Plaintiff must show that the stated reason had no basis in fact; that the stated reason was not the actual reason; or that the stated reason was insufficient to explain the defendant's action. *See* Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1081 (6th Cir. 1994); Wheeler v. McKinley Enters., 937 F.2d 1158, 1162 (6th Cir. 1991).  "A reason cannot be proved to be a pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Virts v. Consol. Freightways Corp. of Delaware, 285 F.3d

508 (6th Cir. 2002) (*quoting,* St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742 (1993)) (emphasis in original).

**Proposed Finding of Fact No. 19:** Plaintiff has no evidence that the reason offered by Defendants is a pretext for discrimination.  According to Plaintiff, he told Shumrick about his end-stage renal failure in February 2007, approximately six months before he was transferred to Hyde Park Landscaping & Tree.  (Pl. Dep. 93, 151-153).  During these six months, neither Shumrick nor anyone else made any comments Plaintiff believed to be discriminatory.  (Pl. Dep. 148).  And, it was only after Ziegler informed Shumrick about his discussion with the Anthem representative, that Shumrick made the decision to transfer Plaintiff.  (Shumrick Dep. 150).  These facts clearly support Defendant's legitimate explanation for Plaintiff's transfer.  It was Plaintiff's falsification of his insurance application and the ramifications to Hyde Park Landscaping, not the fact that he suffered from end stage renal failure, that Shumrick took issue with.  Moreover, while Plaintiff claims Shumrick told him he was transferred because of high insurance premiums rather than his conduct in falsifying the Anthem application (which Defendants deny), it is undisputed that issues related to insurance, rather than Plaintiff's disability, prompted the transfer.  (Shumrick Dep. 158-159; Pl. Dep. 50, 67, 147).

**Proposed Conclusion of Law No. 16:** Plaintiff has no evidence of pretext, and his disability discrimination claim under Count I of his Second Amended Complaint fails as a matter of law.

### C.     Plaintiff Cannot Establish His Claim For Disability Discrimination In Count II Of His Second Amended Complaint Based On Defendants' Alleged Failure To Call Him Back To Work In 2009

**Proposed Conclusion of Law No. 17:** This claim fails as a matter of law because Plaintiff's allegations in support of this claim are untrue and he cannot establish the required elements of a disability discrimination claim.

1.    **Plaintiff Cannot Establish A *Prima Facie* Case Of Disability Discrimination Because Defendants Took No Adverse Actions Against Him**

**Proposed Conclusion of Law No. 18:** An essential element of a *prima facie* case of disability discrimination is the requirement that Plaintiff prove he was subjected to an adverse employment action.  *See* Graham v. Johanns, 2008 U.S. Dist. LEXIS 64458, *26-28 (S.D. Ohio Aug. 21, 2008) (dismissing plaintiff's discrimination claim because plaintiff failed to produce evidence that any adverse employment action was taken against her).  Plaintiff cannot establish that he was subjected to an adverse employment action.

**Proposed Finding of Fact No. 20:** Here, Defendants did not terminate Plaintiff's employment as he claims.  To the contrary, Shumrick wanted Plaintiff to return to work in March 2009, and he contacted Plaintiff by telephone on February 19, 2009 and on February 21, 2009 in an attempt to set up a meeting to discuss that very issue. (Shumrick Dep. 85, 89).  However, Plaintiff failed to call Shumrick or stop by the office as instructed.  (Shumrick Dep. 88-89; Pl. Dep. 79).  Nevertheless, as conclusively demonstrated by Shumrick's cell phone records, he made several more attempts to contact Plaintiff by phone in March, all of which were ignored. (Shumrick Dep. 88-89; Pl. Dep. 79; Pl. Dep. Ex. 2).  Indeed, Plaintiff admits he made no attempt to contact Shumrick in March.  (Pl. Dep. 75, 79).  Based on Plaintiff's failure to contact the Company with regard to his return to work date despite repeated attempts on the part of Shumrick to reach him, the Company reasonably concluded that he abandoned his job.

2.    **Plaintiff Cannot Establish That He Was Constructively Discharged**

**Proposed Conclusion of Law No. 19:** A constructive discharge claim has two elements: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; and (2) the employer did so with the intention of forcing the employee to quit. Agnew v. BASF Corp., 286 F.3d 307, 309 (6th Cir. 2002).  In other words, "a constructive

discharge occurs only where an employer or its agent's conduct is so severe that a reasonable person in the employee's place would feel compelled to resign." Agnew, 286 F.3d at 309. "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." Deters v. Rock-Tenn Co., 2006 U.S. Dist. LEXIS 67743, *14-15 (6th Cir. Sept. 21, 2006) (internal quotations omitted). A plaintiff must demonstrate not only intent, but also "other aggravating factors," demonstrating a continuous and severe pattern of discrimination. See Yates v. Avco Corp., 819 F.2d 630, 637 (6th Cir. 1987).

**Proposed Conclusion of Law No. 20:** Plaintiff's constructive discharge claim fails because he cannot demonstrate that he was compelled to resign.

**Proposed Finding of Fact No. 21:** Plaintiff testified that he wanted to return to work after the layoff. (Pl. Dep. 86; Pl. Dep. Vol. 2 at 15). This admission is fundamentally irreconcilable with his claim that he felt compelled to resign. Furthermore, it is undisputed that the only term and condition that changed during Plaintiff's employment was his entitlement to health benefits in August 2007, and that Plaintiff continued to work for Defendants for well over a year with no company-sponsored health benefits before he was allegedly constructively discharged in 2009.

**Proposed Conclusion of Law No. 21:** The facts demonstrate that Plaintiff did not believe that his working conditions were intolerable and defeat his constructive discharge claim.

**Proposed Finding of Fact No. 22:** Plaintiff also cannot demonstrate Defendants took any actions with the intention of forcing him to quit, much less that he suffered continuing and severe discrimination. Shumrick's decision to terminate Plaintiff's health benefits was prompted by Plaintiff falsifying his Anthem application, and had nothing whatsoever to do with any intention on the part of Shumrick or anyone else to force him to leave his job. To the contrary, Shumrick liked Plaintiff and did not want to terminate him despite Anthem's threat to terminate

the Company's group health plan as long as Plaintiff was on the payroll. (Shumrick Dep. 150-151). Also, as Plaintiff admits, he was not the only employee who was laid off in January 2009, and he understood at the time of the layoff that Shumrick wanted him to return to work after the weather improved. (Pl. Dep. 68-69, 156). Indeed, he was not asked to return any company property, including his uniforms or his company-issued cell phone when he was laid off. (Pl. Dep. 69).

**Proposed Conclusion of Law No. 22:** These undisputed facts further demonstrate that Plaintiff's constructive discharge claim is meritless and must be dismissed.

> 3.    **Defendants' Decision to Terminate Plaintiff's Employment In 2009 Was For a Legitimate, Non-Discriminatory Reason, Which Plaintiff Cannot Establish is a Pretext for Disability Discrimination**

**Proposed Conclusion of Law No. 23:** Even if the Court finds that Plaintiff did somehow suffer an adverse employment action and, therefore, that he can establish a prima facie case of disability discrimination based on his termination in 2009, his discrimination claim still fails because Defendants had a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

**Proposed Finding of Fact No. 23:** Plaintiff made no effort to respond to Shumrick's multiple phone calls regarding his return to work. After it became clear to Shumrick that Plaintiff had no interest in returning to work, he discontinued his efforts to contact Plaintiff for the legitimate, non-discriminatory reason that he believed Plaintiff had abandoned his job, and Plaintiff's employment was eventually terminated.

**Proposed Finding of Fact No. 24:** Plaintiff has absolutely no evidence that Defendant's stated belief that he abandoned his job is a pretext for discrimination. It is undisputed that Plaintiff told Shumrick in February 2007 that he was diagnosed with end-stage renal failure and that Plaintiff (along with most other employees) was not laid off until January 2009. (Pl. Dep.

50, 93; Shumrick Dep. 84). If Shumrick had wanted to terminate Plaintiff because of his alleged disability, he would not have retained him as an employee for nearly two years after he was diagnosed; he would not have let Plaintiff adjust his schedule and take time off work for dialysis treatments (Pl. Dep. 107; Shumrick Dep. 109); he would not have made the decision in 2009 lay off everyone else at the Norwood Ohio location before Plaintiff (Pl. Dep. 68); and he would not have called him multiple times about coming back to work. (Shumrick dep. 85-88, 197; Pl. Dep. Ex. 2; Seiter Aff. ¶ 5).

**Proposed Finding of Fact No. 25:** Plaintiff testified that he was not aware of any facts suggesting Shumrick terminated him because of his disability. (Pl Dep. 147, 155-156). Rather, according to Plaintiff:

> A. . . . [I]t wouldn't have been unusual for Michael to not bring me back. From being there and talking to Michael, I have seen people come in and never come back. He doesn't want them back. That was not unusual. . . . I have seen it happen before several times.
>
> Q. Other than that you've seen it happen before, do you know of any other reason why Michael would not have wanted to bring you back from layoff?
>
> A. No, just to get a fresh aspect, a fresh outlook on what he was trying to do in that office. That office is run as a satellite. He doesn't have a lot of supervision over there, so he relies on us to get the work done. Maybe he wasn't happy with things or wanted more output.

(Pl. Dep. 155-156). Thus, Plaintiff's own deposition testimony belies his claim that Defendants did not call him back to work in 2009 because he suffered from end-stage renal failure.

**Proposed Conclusion of Law No. 24:** Defendants are entitled to summary judgment on Count II of Plaintiff's complaint.

### D. Plaintiff Cannot Establish His Retaliation Claim Under The Ohio Revised Code Or Under ERISA § 510

#### 1. Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation

**Proposed Conclusion of Law No. 25:** In order to establish a *prima facie* case of unlawful retaliation under R.C. 4112 and ERISA § 510, Plaintiff must prove that: (1) he engaged in protected activity; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *See* Hamilton v. Starcom Meadiavest Group, Inc., 522 F.3d 623, 628 (6th Cir. 2008) ("Where, as here, there is no direct evidence of the employer's motivation, we apply the familiar *Burdine* burden shifting approach" to a retaliation claim under ERISA § 510); *See* Moon v. Transport Drivers, Inc., 836 F.2d 226, 229 (6th Cir. 1987). The burden then shifts to the employer to articulate non-discriminatory reasons for its actions. If the employer articulates such reasons, the burden then shifts back to plaintiff, who must prove that the reason offered by the employer is, in fact, a pretext for intentional discrimination. McDonnell Douglas, 411 U.S. at 801-802.

**Proposed Finding of Fact No. 26:** Defendants do not contest that Plaintiff engaged in a protected activity when he filed a lawsuit against Defendants on March 12, 2009, or that Defendants had knowledge of this activity on or about March 16, 2009.

**Proposed Conclusion of Law No. 26:** However, Plaintiff cannot establish the third and fourth elements of his *prima facie* case and, therefore, his retaliation claims fail.

##### a. Plaintiff Was Not Subjected To An Adverse Employment Action

**Proposed Conclusion of Law No. 27:** Defendants did not take any adverse employment actions against Plaintiff and he was not constructively discharged.

**Proposed Finding of Fact No. 27:** The evidence shows it was Plaintiff who ceased communicating with the Company, not the other way around.  It is undisputed that Plaintiff made no effort to return the phone calls Shumrick placed to him on March 3, 2009, March 6, 2009, or March 10, 2009, and that he filed his Complaint on March 12, 2009.  (Pl. Dep. 79, Pl. Dep. Ex. 2; Dkt. #3).  Sometime shortly thereafter, Shumrick was served with notice of the lawsuit.  Given Plaintiff's actions in actively ignoring Shumrick *prior to* filing his Complaint, it was more than reasonable for Shumrick to conclude after he was served with the Complaint that Plaintiff had no intention of returning to work. What other conclusion could Shumrick possibly reach after weeks of being ignored by Plaintiff and then receiving notice that Plaintiff was suing him.  Based on Shumrick's understanding that Plaintiff abandoned his employment, he ceased in his efforts to call Plaintiff back to work. (Shumrick Dep. 93, 198).

**Proposed Conclusion of Law No. 28:** Plaintiff's retaliation claim must be dismissed on the grounds that he voluntarily abandoned his employment and did not suffer any adverse employment action.

### b.     Plaintiff Cannot Establish A Causal Connection

**Proposed Conclusion of Law No. 29:** Plaintiff also cannot establish his *prima* facie case because he cannot establish a causal connection between his protected activity and any alleged adverse employment action.  To establish a causal connection, Plaintiff must provide sufficient evidence for a reviewing court to infer that an employer would not have taken the alleged adverse employment action, had the plaintiff not engaged in a protected activity.  *See* EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997).  Temporal proximity alone will not support an inference of retaliation if there is evidence to the contrary.  *See* Moon, 836 F.2d 226 at 229.

**Proposed Finding of Fact No. 28:** Plaintiff has adduced no evidence that Defendants took any actions against him because he filed the instant lawsuit on March 12, 2009. While Plaintiff alleges he called Shumrick at some point in February to "have meetings," he admits he made no attempt to call Shumrick in March, either before or after he filed his Complaint. (Pl. Dep. 79; Pl. Dep. Vol. 2 at 12, 15). Furthermore, Shumrick attempted to call Plaintiff on three separate occasions in March, and Plaintiff does not contest or deny that he Shumrick attempted to call him on the dates and times listed in Shumrick's phone records. (Pl. Dep. 85-86; Pl. Ex. 2). Accordingly, assuming *arguendo* Plaintiff tried to call Shumrick in February to "have meetings" (which Defendants deny), Shumrick did call him back, not once but three times. And, while he claims that he "never decided not to come back," (Pl. Dep. Vol. 2 at 15) his actions in failing to respond to any of Shumrick's efforts to reach out to him conveyed the exact opposite.

**Proposed Conclusion of Law No. 30:** Plaintiff cannot establish his retaliation claim based on any alleged failure on the part of Shumrick to return his phone calls.

**Proposed Conclusion of Law No. 31:** Absent any evidence linking action taken against Plaintiff to his protected activities, Defendants are entitled to summary judgment on the retaliation claim as a matter of law.

> **2. Plaintiff Cannot Establish Defendants' Legitimate, Non-Discriminatory Reasons Were Pretextual**

**Proposed Conclusion of Law No. 32:** Shumrick had legitimate, non-discriminatory reasons for discontinuing his ongoing efforts to call Plaintiff regarding his return to work, namely his reasonable belief, based on receiving no communication from Plaintiff other than a lawsuit, that Plaintiff had abandoned his job. Because Plaintiff cannot demonstrate that Defendants' stated reasons are a pretext for retaliation, Plaintiff's retaliation claim must be dismissed.

**E.** **Plaintiff's Claims For Relief Against Defendants Concerning Alleged Interference With Medical Benefits Must Be Dismissed**

    **1.** **Money Damages And Other Non-Equitable Relief Are Prohibited Under ERISA § 502(a)(3), and Plaintiff's Claim For Money Damages Must Be Dismissed**

**Proposed Conclusion of Law No. 33:** Section 510 of ERISA makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140.  Alleged violations of ERISA § 510 are not independently actionable. Rather, § 510 claims must be brought under § 502(a)(3) of ERISA's civil enforcement scheme and are limited to the relief available under that section. Alexander v. Bosch Auto. Sys., 232 Fed. Appx. 491, 496 (6th Cir. 2007) (Attached as Exhibit C), *cert. denied,* 128 S. Ct. 2995 (2008); Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1247 (10th Cir. 2004) ("Section 502(a)(3) of ERISA provides the plan participant with his exclusive remedies for a § 510 violation.").

**Proposed Conclusion of Law No. 34:** Section 502(a)(3) permits a civil action: "by a participant, beneficiary, or fiduciary (A) *to enjoin* any act or practice which violates any provision of this title or the terms of the plan, or (B) *to obtain other appropriate equitable relief (i)* to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan." 29 U.S.C. § 1132(a)(3) (emphasis added). "ERISA § 502(a)(3) [therefore] authorizes only suits for injunctive or other equitable relief."  Crosby v. Bowater Inc., 382 F.3d 587, 589 (6th Cir. 2004).

**Proposed Conclusion of Law No. 35:** It is well-established that the "monetary compensation," "money damages" and other non-equitable relief that Plaintiffs seek are not available under ERISA § 502(a)(3). Rather, narrowly construing the equitable relief allowed

under § 502(a)(3), the Supreme Court has held "that the term equitable relief in § 502(a)(3) must refer to those categories of relief that were *typically* available in equity." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (internal quotations omitted) (emphasis added). As the Supreme Court has also made clear, "'[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." Crosby, 382 F.3d at 594 (internal quotations omitted). "[M]oney damages are, of course, the classic form of *legal* relief." Great-West, 534 U.S . at 210; Crosby, 382 F.3d at 594.

**Proposed Conclusion of Law No. 36:** Courts within the Sixth Circuit have consistently rejected claims for legal damages under ERISA § 502(a)(3). In Alexander, for example, defendant employer appealed a district court judgment in favor of 36 employees on their claim of unlawful interference under § 510. The employees alleged that the employer intentionally timed their layoffs and a plant closing to deprive them of plant closure benefits. After finding the employer liable on that claim, the district court ordered the employer to "instate" them to a list of employees eligible to receive plant closure benefits under a collective bargaining agreement.

**Proposed Conclusion of Law No. 37:** On appeal in the Alexander claim, *the employer conceded liability* on plaintiffs' ERISA § 510 claim, but argued for reversal on grounds that the remedy was not "appropriate equitable relief" as permitted under § 502(a)(3). The Sixth Circuit agreed and vacated the district court judgment, even though it left the employees without a remedy. Alexander, 232 Fed. Appx. at 502. The court reasoned that the remedy ordered by the district court was akin to contractual reformation rather than reinstatement, and reformation was inappropriate because there was no allegation the parties had an agreement that was improperly reduced to writing. *Id.* at 498-499. Likewise, equitable restitution was unavailable since the

24

employees did not seek specifically identifiable funds, but rather sought to impose personal liability on the employer by recovering from its general assets. *Id.* at 501; *see also* Ramsey v. Formica Corp., 398 F.3d 421, 425 (6th Cir. 2005) (ERISA "does not provide a cause of action for legal actions for monetary damages disguised as suits in equity"); Crosby, 382 F.3d at 589 ("request for recovery of additional lump sum benefits" held not equitable relief under § 502(a)(3)); Caffey v. UNUM Life Ins. Co., 302 F.3d 576, 583 (6th Cir. 2002) ("compensatory and punitive damages are not considered equitable relief for the purposes of [§ 502(a)(3)].").

**Proposed Conclusion of Law No. 38:** Plaintiffs are not entitled to any of the remedies they seek under ERISA § 510, including an order requiring Defendant to "place Plaintiff in the same position he would have been in but for Defendants' unlawful actions." (Second Amended Complaint, Prayer at ¶¶ 3-5).

**Proposed Conclusion of Law No. 39:** An order requiring Defendant to "place Plaintiff in the same position he would have been in" would be tantamount to an award of money damages, which are not available under Section 502(a)(3). *See also* Halbach v. Great-West Life & Annuity Ins. Co., 561 F.3d 872, 883 (8th Cir. 2009) (past due disability benefits and COBRA overpayments were not "appropriate equitable relief" under ERISA § 502(a)(3)); Millsap, 368 F.3d at 1260-1261 (holding that an award of backpay is not permitted under ERISA § 502(a)(3); Carsetter v. Adams County Transit Auth., 2008 U.S. Dist. LEXIS 51874, *43 (M.D. Pa. July 8, 2008) (plaintiff's "claim for unpaid medical benefits fails to qualify as equitable restitution because [plaintiff] seeks to impose liability against [defendant's] general assets rather than against a discreet, limited fund in its possession."); Alberti v. Lewis, 2006 U.S. Dist. LEXIS 65544, *7 (W.D. Pa. Sept. 12, 2006) (plaintiff's claim for unpaid medical benefits did not constitute "appropriate equitable relief" under ERISA § 502(a)(3)).

**Proposed Conclusion of Law No. 40:** Since ERISA § 510 claims can only proceed under ERISA § 502(a)(3), and the compensation, money damages, and other non-equitable relief that Plaintiff seeks cannot be awarded against Defendants under § 502(a)(3), the Complaint fails to state a plausible claim for such relief against it and should be dismissed.

### 2. Plaintiff's Request For Catch-All Equitable Relief Does Not Salvage Plaintiff's ERISA 510 Claim

**Proposed Conclusion of Law No. 41:** Plaintiff's boilerplate request for "all equitable relief", however, do not comply with Federal Rule of Civil Procedure 8(a)(3), which requires a plaintiff to identify the relief he or she seeks, and Plaintiff declined to specifically define his requested relief during discovery.

**Proposed Finding of Fact No. 29:** Plaintiff has invited the Court to ascertain what "appropriate equitable relief" he may seek in this case under ERISA § 502(a)(3).

**Proposed Conclusion of Law No. 42:** Because Plaintiff's generic request for equitable relief does not comply with Rule 8(a)(3), and because the relief Plaintiff has specifically requested does not constitute "other equitable relief," his ERISA § 510 claim must be dismissed. *See* Cook v. Campbell, 482 F. Supp. 2d 1341, 1360 (M.D. Ala. 2007) ("Rule 8(a)(3) requires a plaintiff to identify the nature of the relief sought to which the plaintiff believes he or she is entitled. . . . Plaintiffs' generic 'catch all' prayer for relief sheds no illumination on the type or nature of additional relief sought. Plaintiffs have failed to plead or otherwise articulate in their brief an alternative form of relief which they claim is available to them under § 502(a)(3)(B), and the court is aware of none."); Kishter v. Principal Life Ins. Co., 186 F. Supp. 2d 438, 446 (S.D.N.Y. 2002) (court considered request for "such other . . . equitable relief as the Court deems appropriate" as invitation to use its "ingenuity" to suggest a form of equitable relief that would be appropriate; the court was unsuccessful in fashioning such a remedy); Hall v. United

Technologies, Corp., 872 F. Supp. 1094, 1099-1100 (D. Conn. 1995) (complaint's prayer for relief requesting "such other relief as the Court deems appropriate" did not save the § 502(a)(3) claim from dismissal under Rule 12(b)(6)); *see also* Crosby, 382 F.3d at 589, 592 (ordering dismissal of § 502(a)(3) case despite request that court "award any other equitable relief this Court deems appropriate"); In re Cardinal Health ERISA Litig., 424 F. Supp. 2d 1002, 1025-26 (S.D. Ohio 2006) (where prayer for relief sought "such other relief as the Court may deem equitable and just," court dismissed all § 502(a)(3) claims, observing: "though Plaintiffs try to mask their requested relief as equitable, in truth, it is nothing more than 'compensatory damages'").

### 3. Plaintiff Cannot Otherwise Establish An ERISA 510 Claim With Respect To His Transfer To Hyde Park Landscaping And Tree On The Merits

**Proposed Conclusion of Law No. 43:** To make out a *prima facie* case under Section 510, a plaintiff must prove: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which an employee may become entitled. Smith v. Ameritech, 129 F.3d 857, 865 (6th Cir. 1997). This means that Plaintiff must show that Defendants "made a conscious decision to interfere with [his] attainment of pension eligibility or additional benefits." Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 785 (3d Cir. 2007). However, no action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination. Meredith v. Navistar Int'l Transp. Corp., 935 F.2d 124, 127 (7th Cir. 1991). Furthermore, if a plaintiff establishes a *prima facie* case under Section 510 by direct or indirect evidence, the employer can rebut the inference raised by introducing evidence of a legitimate, nondiscriminatory reason for its challenged action. Smith, 129 F.3d at 865.

**Proposed Conclusion of Law No. 44:** Plaintiff cannot show that Defendant acted for the purpose of interfering with his benefits.  Even if Mr. Bolden's transfer to Hyde Park Landscaping and Tree had the effect of interfering with the attainment of any benefits to which he was entitled, Defendants' decision to transfer him was based on legitimate non-discriminatory reasons.  Shumrick transferred Plaintiff because he falsified his insurance application, and Anthem was threatening to cancel the coverage if Plaintiff was on the Hyde Park Landscaping payroll.

### 4.    Plaintiff's ERISA 510 Claim With Respect To Defendant's Alleged Failure To Provide Him With COBRA Notice And Benefits Must Be Dismissed

**Proposed Conclusion of Law No. 45:** Alleged violations of ERISA § 510 are not independently actionable. Rather, § 510 claims must be brought under § 502(a)(3) of ERISA's civil enforcement scheme and are limited to the equitable relief available under that section.  *See* Alexander, 232 Fed. Appx. 491 at 496.  If a participant or beneficiary has no adequate remedy under the other provisions of ERISA § 502, he may seek *equitable relief* under ERISA § 502(a)(3).  *See* Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).  However, where recovery under another provision of ERISA § 502 is available and adequate, it is the exclusive remedy for plan participants, such as Plaintiff.  Id.; *see also* Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609, 615 (6th Cir. 1998) ("The Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies.").

**Proposed Conclusion of Law No. 46:** ERISA provides an aggrieved COBRA beneficiary a cause of action under ERISA § 502(c)(1) for violations of COBRA notice violations.  *See* 29 U.S.C. § 1132(c)(1 (providing for a penalty of up to $110 per day for failure to meet COBRA notice requirements). When COBRA violations result in the loss of a qualified beneficiary's insurance coverage, a court may in its discretion "order such other relief as it deems

proper," including compensatory damages in an amount equal to medical expenses minus deductibles and premiums that the beneficiary would have had to pay for COBRA coverage. *See* 29 U.S.C. § 1132(c)(3); *see also* <u>Sonnichsen v. Aries Marine Corp.</u>, 673 F. Supp. 2d 466, 474 (W.D. La. 2009) (discussing the remedies available under COBRA). Because adequate relief for Plaintiff's alleged COBRA notice violation under ERISA § 502(c) is duplicative of the relief Plaintiff seeks sought pursuant to ERISA § 510, Plaintiff's Section 510 claim relative to Defendants' alleged COBRA violations must be dismissed. *See* <u>Pelosi v. Schwab Capital Markets, L.P.</u>, 462 F. Supp. 2d 503 (S.D.N.Y. 2006) (dismissing plaintiff's ERISA § 510 claim because it was duplicative of his claim for benefits under ERISA § 502(a)(1)(B)).

**Proposed Conclusion of Law No. 47:** Assuming *arguendo* Plaintiff is entitled to assert his COBRA claim under ERISA § 510, which he is not, he cannot establish the requisite intent to interfere with his alleged entitlement to COBRA benefits.

**Proposed Finding of Fact No. 30:** As Ziegler testified in his deposition, his failure to provide COBRA notice to Anthem was unintentional; Ziegler simply was not aware of the Company's obligations with regard to COBRA at the time Plaintiff's Anthem benefits were terminated. (Ziegler Dep. 193-194). And, as Plaintiff admits, he did not approach Ziegler or anyone else at the Company to request COBRA. (Pl. Dep. Vol. 2 at 8).

**Proposed Conclusion of Law No. 48:** Plaintiff's ERISA § 510 claim based on alleged COBRA violations must be dismissed for this additional reason. *See* <u>Lockett v. March USA, Inc.</u>, 354 Fed. Appx. 984, *19 (6th Cir. Dec. 3, 2009) (plaintiff's ERISA § 510 claim failed because she failed to adduce evidence that his employer had a "specific intent" to violate her rights under ERISA); <u>Schweitzer v. Teamsters Local 100</u>, 413 F.3d 533, 537 (6th Cir. 2005) (a plaintiff cannot recover under Section 510 unless he or she demonstrates the employer had a specific intent to violate ERISA).

### F.  Plaintiff Cannot Establish His ERISA Section 702 Claim

**Proposed Conclusion of Law No. 49:** Plaintiff's ERISA claim under §702 fails as a matter of law, however, because none of the Defendants are subject to liability under that provision.

**Proposed Conclusion of Law No. 50:** ERISA § 702 provides in relevant part as follows:

> Subject to paragraph (2), a ***group health plan***, and a ***health insurance issuer offering group health insurance coverage*** in connection with a group health plan, ***may not establish rules for eligibility*** (including continued eligibility) of any individual to enroll under the terms of the plan based on any of the following health status-related factors in relation to the individual or a dependent of the individual: (A) Health status. (B) Medical condition (including both physical and mental illnesses). (C) Claims experience. (D) Receipt of health care. (E) Medical history. (F) Genetic information. (G) Evidence of insurability (including conditions arising out of acts of domestic violence). (H) Disability.

29 U.S.C. 1182(a)(1) (emphasis added).

**Proposed Conclusion of Law No. 51:** ERISA § 702 imposes duties and obligations on group health plans and health insurance issuers, but not on employers or plan administrators. Since none of the Defendants qualify as a group health plan or a health insurance issuer offering group health insurance coverage, Plaintiff may not maintain an ERISA § 702 action against them. *See* VanderKlok v. Provident Life & Accident Ins. Co., 956 F.2d 610, 618 (6th Cir. 1992) (holding that the plan cannot be held liability for duties ERISA imposes on the plan administrator); Walter v. International Ass'n of Machinists Pension Fund, 949 F.2d 310, 315 (10th Cir. 1991) (dismissing plaintiff's ERISA cause of action against the plan where the ERISA provision on which plaintiff relied addressed plan administrator duties, but not plan duties); Groves v. Modified Retirement Plan, 803 F.2d 109, 116 (3rd Cir. 1986) (cited by the Sixth Circuit in VanderKlok with approval, and holding that ERISA provisions providing for recovery

against the "plan" cannot be used to recover against the "plan administrator" because "the terms 'plan' and 'plan administrator' refer to two entirely distinct actors . . . [and] are terms of art.").

**Proposed Conclusion of Law No. 52:** Plaintiff's ERISA § 702 claim is not based on any alleged unlawful enrollment restrictions or rules for eligibility under one or more of Defendants' group health plans. (Second Amended Complaint ¶ 91). Rather, it is based solely on the alleged fact that Defendants "denied [Plaintiff] the ability to participant in Defendants' group health insurance plan based on his health status, medical condition, claims experience, receipt of health care, medical history and/or disability." *Id.*

**Proposed Conclusion of Law No. 53:** Plaintiff has failed to allege any conduct that is actionable under ERISA § 702. *See* New Life Homecare, Inc. v. Blue Cross of North Eastern Pa., 2008 U.S. Dist. LEXIS 11014 *24-25 (M.D. Pa. Feb. 14, 2008) (holding that ERISA Section 702 does not apply to the decision to provide or not to provide coverage).

**Proposed Conclusion of Law No. 54:** Even if Plaintiff has alleged a viable cause of action against Defendants' under ERISA § 702, which does not, Defendants did not take any actions against him based on the health status-related factors enumerated in the statute. Rather, Plaintiff was not offered the opportunity to participate in the Company's group health insurance plans after he falsified his Anthem application because he was an employee of Hyde Park Landscaping & Tree, and this entity does not provide group health insurance. Because Plaintiff has not alleged a viable cause of action under ERISA § 702, this claim must be dismissed for the aforementioned reasons.

G.    **Plaintiff Cannot Establish His Federal COBRA Claims**

**Proposed Conclusion of Law No. 55:**  Plaintiff's COBRA claims fail as a matter of law.

1.    **Plaintiff's COBRA Claim Based On His Termination From The Anthem Plan In 2007 Is Barred By The Applicable Statute Of Limitations**

**Proposed Conclusion of Law No. 56:**  ERISA provides an aggrieved COBRA beneficiary a cause of action under ERISA § 502(c)(1) for violations of COBRA notice violations.  *See* 29 U.S.C. § 1132(c)(1) (providing for a penalty of up to $110 per day for failure to meet COBRA notice requirements).  When COBRA violations result in the loss of a qualified beneficiary's insurance coverage, a court may in its discretion "order such other relief as it deems proper." *See* 29 U.S.C. § 1132(c)(3); *see also* Sonnichsen, 673 F. Supp. 2d at 474.

**Proposed Conclusion of Law No. 57:**  Because § 1132 does not contain a statute of limitations, courts must borrow the state law limitations  period applicable to claims most closely corresponding to the federal cause of action.  DelCostello v. International Broth. of Teamsters, 462 U.S. 151, 158, (1983).

**Proposed Conclusion of Law No. 58:**  Courts have consistently found that the most analogous state cause of action to a COBRA claim would be under a state civil penalty or forfeiture statute.  *See* Kumar v. Higgins, 91 F. Supp. 2d 1119, 1123-1124 (N.D. Ohio 2000) (rejecting plaintiff's argument that Ohio's fifteen year statute of limitations for breach of contract applies); Iverson v. Ingersoll-Rand, 125 Fed. Appx. 73, *76-77 (8th Cir. 2004) (affirming the application of North Dakota's statute of limitations for actions upon a statute for a penalty or forfeiture to plaintiff's COBRA claim); Phillips v. Wythe County Community Hosp., 2008 U.S. Dist. LEXIS 102969 **4-5 (Dec. 22, 2008) (same under Indiana law).  In Ohio, R.C. § 2305.11(A) provides a one-year statute of limitations for actions upon a statute for a penalty or forfeiture.  Higgins, 91 F. Supp. 2d at 1124 (holding that the closest analogous state statute of

limitations is R.C. § 2305.11(A)). Therefore, a one-year statute of limitations applies to Plaintiff's federal COBRA claim. *Id.*

**Proposed Conclusion of Law No. 59:** "Although the statute of limitations may be borrowed from state law, it is federal law that determines the date on which a statute begins to run." Michigan United Food & Com. Workers v. Muir Co., 992 F.2d 594, 598 (6th Cir. 1993). Courts have found that the federal discovery rule governs the date on which a cause of action under ERISA accrues. *Id.* at 597-598 (applying the discovery rule to a case under ERISA §§ 502 and 515); Frye v. Metro. Life Ins. Co., 2010 U.S. Dist. LEXIS 134565, *47 (S.D. W. Va. Dec. 20, 2010) (applying the discovery rule to a claim under ERISA § 502(c)); *see also* Bryant v. Food Lion, Inc., 100 F. Supp. 2d 346, 377 n. 139 (D. S.C. 2000) ("The plaintiffs are charged with constructive notice of the law as stated in ERISA and COBRA."). Therefore, the COBRA statute of limitations begins to run when a plaintiff discovers, or by the exercise of due diligence should have discovered, the *facts* forming the basis of his or her cause of action. Michigan United, 992 F.2d at 598 (citing cases and stating "[i]n our application of the discovery rule to this case, the central question is when the Welfare Fund should have become aware of Muir's underpayments.").

**Proposed Conclusion of Law No. 60:** COBRA requires that an employer provide an employee with the option of electing continuation coverage under the same terms as the employer's health plan after some qualifying event, as defined in ERISA § 603, which would otherwise end the employee's health insurance coverage. ERISA § 601(a), 29 U.S.C. § 1161(a); ERISA § 603, 29 U.S.C. § 1163. An event that causes an employee to lose coverage under a health plan is one such qualifying event. *See* 26 C.F.R. 54.4980B-4. Furthermore, the plan administrator must notify the employee of his or her option to elect continuation coverage no later than forty-four days after the qualifying event. ERISA § 606, 29 U.S.C. § 1166(a).

**Proposed Conclusion of Law No. 61:**  In accordance with the discovery rule, Plaintiff's COBRA cause of action based on his 2007 transfer accrued, at the latest, forty-five days after his medical benefits were terminated in August 2007. (Pl. Dep. 114); <u>Phillips</u>, 2008 U.S. Dist. LEXIS 102969  at 6-17 n.7 (noting that a COBRA cause of action under § 1132(c)(1)(A) normally accrues forty-five days after the qualifying event); <u>Bryant</u>, 100 F. Supp. 2d at 377 (concluding that the accrual date for a COBRA notice violation is "at the most the fort-fifth day after the participant is terminated.").

**Proposed Finding of Fact No. 31:**  According to Plaintiff, he learned that his Anthem benefits were terminated sometime in "early" August, 2007.  (Pl. Dep. 114-115).

**Proposed Conclusion of Law No. 62:**  Because Plaintiff did not file his Complaint until March 12, 2009, more than one year after his COBRA claim accrued, his COBRA claim relative to his transfer to Hyde Park Landscaping & Tree must be dismissed.   *See* <u>Higgins</u>, 91 F. Supp. 2d at 1124 (dismissing plaintiff's COBRA claim that was filed outside the statute of limitations period).

> **2.    Plaintiff's COBRA Claim Based On His Layoff And Job Abandonment In 2009 Is Without Merit Because He Was Not A Participant In Any ERISA Plan In 2009**

**Proposed Conclusion of Law No. 63:** Plaintiff was not entitled to COBRA notice or benefits because, as he admits, he was not a participant in any group health plan at that time and had not been since August 2007.  (Pl. Dep. Vol. 2 at 7).

**Proposed Conclusion of Law No. 64:** Mere *eligibility* for coverage under an employer-sponsored group health plan is not sufficient to make an employee eligible for COBRA continuation coverage.  *See* I.R.C. §4980B(f)(7) (a covered employee is "an individual who is (or was) *provided coverage* under a group health plan")(emphasis added).  If coverage for which an employee is allegedly eligible is never implemented, the employee will not be eligible for

COBRA benefits even if he or she is subject to a qualifying event. *See* Meade v. Honda of America Mfg., 2009 U.S. Dist. LEXIS 17145, **10-11 (S.D. Ohio Feb. 27, 2009) (COBRA claim dismissed because plaintiff was not enrolled in defendant's group health care plan at the time of the qualifying event); Walker v. Doctors Hosp. of Hyde Park, 110 F. Supp. 2d 704, 715-716 (N.D. Ill. 2000) (employee who was never covered under the employer's health care plan is -not a covered employee for purposes of notification of right to continue in plan following termination).

**Proposed Conclusion of Law No. 65:** Because Plaintiff was not a participant in Defendant's health care plan when he abandoned his job in 2009, he was not entitled to COBRA coverage or notice.

Respectfully submitted,

*/s/ Alison M. Day*
Alison M. Day, Trial Attorney  (#0068060)
Melanie A. Houghton, Of Counsel  (#0082760)
LITTLER MENDELSON, P.C.
21 East State Street #1600
Columbus, OH  43215
Telephone:   614.463.4201
Facsimile:   614.221.3301
E-mail:       aday@littler.com
              mhoughton@littler.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing has been filed via the electronic filing system on April 15, 2011. Notice of filing will be performed by the Court's electronic filing system, and Parties may access the document through the electronic filing system.

/s/ Alison M. Day
Attorney for Defendants

Firmwide:101201964.2 062309.1001
4/15/11